**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HENRY L. MANNS,

        Petitioner,

vs.                              Case No.:     3:13-cv-1593-J-32JBT
                                                      3:10-cr-297-J-32JBT

UNITED STATES OF AMERICA,

        Respondent.

_____/

## **ORDER**

       This case is before the Court on Petitioner Henry Manns's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  (Doc. 1).[1]  The United States has responded (Doc. 4), but Petitioner did not file a reply.  Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition.  See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief).    For the reasons set forth below, Petitioner's Motion to Vacate is due to be denied.

---

[1]     Citations to the record in the underlying criminal case, United States of America vs. Henry Manns, Case No. 3:10-cr-297-J-32JBT, will be denoted as "Crim. Doc. __."  Citations to the record in the civil § 2255 case, Case No. 3:13-cv-1593-J-32JBT, will be denoted as "Doc. __."

## I.  Background

While out on supervised release for various prior drug convictions (see Case No. 3:88-cr-54-J-20) ("the 1988 case"), Petitioner committed another controlled substance offense when he attempted to purchase half a kilogram (500 grams) of cocaine.  A grand jury indicted Petitioner on one count of attempting to possess with intent to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  (Crim. Doc. 1).  Pursuant to 21 U.S.C. §§ 851(a)(1) and 841(b)(1)(B), the United States also filed an "Information to Establish Prior Conviction."  (Crim. Doc. 14).  The United States established that Petitioner had previously been convicted of more than 40 felony offenses in the 1988 case (see Crim. Doc. 14-1), which involved the takedown of one of Jacksonville's most significant crack cocaine operations.  Under § 841(b)(1)(B), the prior felony drug convictions had the effect of increasing Petitioner's mandatory minimum prison sentence from five years to ten years, and the maximum sentence rose from 40 years to life.

Petitioner pled guilty to the charge by way of an open plea.  (See Doc. 4-2; Crim. Doc. 62).  At the plea colloquy, the Court advised Petitioner of his rights, as well as the fact that if he pled guilty, he waived many of these rights.  (Id. at 8-11).  The Court advised Petitioner of the charge and its elements, and Petitioner stated that he understood.  (Id. at 13-14). The Court also advised Petitioner that he faced a mandatory minimum term of ten years in prison and a maximum sentence of life in prison.  (Id. at 14).  At each turn, Petitioner stated that he understood his rights and the consequences of pleading guilty.  The Court instructed Petitioner to listen

2

carefully to the factual basis, because it would need Petitioner to verify whether it was true. (Id. at 17).

The factual basis reflected that on November 17, 2010, Petitioner met up with a female undercover officer and an undercover DEA agent at a McDonald's restaurant in Lake City, Florida. The DEA agent, who was equipped with a recording device, was posing "as a Mexican source capable of supplying kilogram quantities of cocaine." (Id.). The agent told Petitioner that he sold bricks of high-purity cocaine by the kilogram. (Id. at 18). Petitioner told the agent that he would like to start with purchasing one kilogram of cocaine, and afterward "that he wished to increase the number of kilograms he receives." (Id.). The negotiated price for a kilogram was $26,000. (Id.). The agent told Petitioner that it would take about two weeks to deliver the cocaine because he was awaiting a shipment from the border. (Id.). Accordingly, the DEA agent told Petitioner that they could meet again on December 5th or 6th, 2010. (Id.). Petitioner had discussed purchasing seedless marijuana from the agent as well (id.), but no marijuana transaction would come to fruition.

On December 5, 2010, the female undercover officer held a series of controlled telephone calls with Petitioner. (Id. at 18-19). Petitioner informed the officer that he could only get half the money together, and therefore asked if he could still purchase half a kilogram of cocaine. (Id. at 19). The officer told Petitioner that although the source – the undercover DEA agent – typically did not sell half-kilograms, he was willing to meet with Petitioner and would consider doing that. (Id.). Petitioner

offered to "bring some car titles as collateral in case the cocaine source was willing to give him more cocaine." (Id.).

On December 6, 2010, Petitioner met up again with the female undercover officer and the undercover DEA agent in Lake City, Florida. (Id.). The meeting was captured on an audio-video recording device. (Id.). Petitioner arrived with a total $13,100, of which $10,600 was contained in an envelope, while the remaining $2,500 was in Petitioner's pocket. (Id. at 20). Petitioner approached the undercover vehicle and tossed the envelope onto the center console. (Id. at 19). The DEA agent contacted another DEA task force officer (DEA TFO) in the area, "who was driving an undercover trap car containing two kilograms of cocaine in the trunk." (Id. at 20). The DEA TFO drove her vehicle to the meeting site and showed Petitioner the two kilograms of cocaine. (Id.). The undercover DEA agent told Petitioner that since he had brought half the money, the agent would cut one of the kilograms in half and return it to Petitioner. Petitioner agreed. (Id.). At that point, the undercover DEA agent gave the "bust signal" and Petitioner was arrested. (Id.).

The Court asked whether the factual basis was true, and Petitioner affirmed that it was. (Id. at 20-21). Petitioner admitted to each element of the attempt charge, including that he took a substantial step toward acquiring the drugs, and that the crime involved 500 grams or more of cocaine. (Id. at 21). Petitioner confirmed that it was his own free and voluntary decision to plead guilty. (Id. at 21-22, 24). Accordingly, the Court accepted his plea and adjudicated him guilty of the charge. (See id. at 25; Crim. Doc. 38).

4

Petitioner appeared before the Court on January 11, 2012 for a sentencing hearing and final revocation of supervised release from the 1988 case. (See Doc. 4-1; Crim. Doc. 51). The Court advised Petitioner that the prison sentence for violating the terms of supervised release would have to run consecutively to whatever sentence he received on the new conviction. (Id. at 7). The Court further advised Petitioner that the sentence for violating the terms of supervised release could be as great as 32 years. (Id. at 6-7). Petitioner stated that he understood the potential penalty, that he admitted to violating the terms of supervised release, and that he waived his right to a hearing on the matter. (Id. at 6-8). The Court concluded that the United States Sentencing Guidelines recommended a range of eight to 14 months in prison for violating the terms of supervised release. (Id. at 6, 28).

With respect to the new conviction, the Court determined that Petitioner had a total offense level of 23 and a Criminal History Category of III, yielding an advisory sentencing range of 57 to 71 months. (Id. at 27). However, because of the § 851 prior-conviction enhancement, Petitioner's mandatory minimum sentence was ten years (120 months) in prison, which became his Guidelines range (id. at 27).

Due to Petitioner's extensive criminal history, which included not only convictions on dozens of counts in the 1988 case but also a prior conviction for violating the conditions of supervised release in 2007, the government argued for an upward variance. (See id. at 30-40). The United States requested that the Court sentence Petitioner somewhere in the range of 168 to 210 months in prison, followed

by a consecutive 12-month prison term for the 2010 violation of supervised release. (Id. at 40).

The Court agreed to vary upwards, and it sentenced Petitioner to a term of 168 months in prison for the new conviction, followed by a consecutive 12-month prison sentence for violating the terms of supervised release.  (Id. at 77-78).  In analyzing the relevant sentencing factors under 18 U.S.C. § 3553(a), the Court explained that such a sentence was necessary because of, among other reasons, the amount of cocaine involved; Petitioner's long criminal history; the seriousness of the offense; and the need to promote respect for the law, provide just punishment, protect the public from future crimes of the Petitioner, and promote both specific and general deterrence.  (Id. at 61-72).  The Court stated it would recommend that Petitioner receive appropriate substance abuse programming while incarcerated "if indicated." (Id. at 73).  The Court also sentenced Petitioner to an eight-year term of supervised release following his term of imprisonment, during which time the Court would recommend Petitioner for educational and vocational programming, and require that Petitioner "be evaluated for any substance abuse issues."  (Id. at 73-74).

Petitioner appealed his sentence, arguing that it was substantively unreasonable.  See United States v. Manns, 491 F. App'x 77, 77-78 (11th Cir. 2012). The Eleventh Circuit Court of Appeals rejected the argument and concluded that the sentence was reasonable, thereby affirming the sentence.  Id. at 78-79.  Petitioner did not request certiorari review from the Supreme Court.

Petitioner then filed this § 2255 motion, which the United States acknowledges is timely.  Petitioner raises three grounds of ineffective assistance of counsel in the Motion to Vacate.

## II.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence.  Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack.  28 U.S.C §2255(a) (2008).  Only jurisdictional claims, constitutional claims, and claims of error that are so fundamental as to cause a complete miscarriage of justice will warrant relief through collateral attack.  United States v. Addonizio, 442 U.S. 178, 184-86 (1979).  A challenge based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack.  United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance.  Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994).  The petitioner must show, in

light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### A. Ground One: Whether counsel was ineffective for not objecting that the factual basis for the guilty plea was insufficient

Petitioner argues that counsel gave ineffective assistance by failing to object to the adequacy of the factual basis for his guilty plea. (Doc. 1 at 17-18). Specifically, Petitioner contends that the factual basis insufficiently established the drug quantity. Petitioner argues that the amount of money he tossed into the undercover vehicle, i.e., $10,600 in an envelope that he tossed onto the car's center console, was not enough to purchase 500 grams of cocaine. Petitioner asserts that "[b]ecause

Movant never had sufficient funds to purchase [500 grams of cocaine], the Government failed to establish an essential element of the charged offense, sufficient to sustain Movant's guilty plea." (Id. at 18).

This claim is due to be denied.  Counsel's performance was neither deficient nor prejudicial because counsel had no basis for objecting to the adequacy of the factual basis.  As a matter of law, no part of 21 U.S.C. §§ 841 or 846 requires that, for a defendant to be guilty of attempting to possess cocaine with intent to distribute, the defendant must have sufficient funds to purchase the narcotics.

Rather, to sustain a conviction for attempted possession of cocaine with intent to distribute, the government need only prove beyond a reasonable doubt that the defendant "(1) acted with the kind of culpability required to possess cocaine knowingly and wilfully and with the intent to distribute it; and (2) engaged in conduct which constitutes a substantial step toward the commission of the crime under circumstances strongly corroborative of their criminal intent."  United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001).  At the plea colloquy, Petitioner directly admitted to each of these elements.  (Crim. Doc. 62 at 20-22).  The government read aloud the factual basis, which reflected that Petitioner had negotiated the purchase of a half-kilogram of cocaine with one of its agents; that on the arranged date and time, Petitioner arrived at the location where the transaction was to occur carrying thousands of dollars in cash; and that Petitioner agreed to wait while one of the agents purportedly cut one of the kilograms of cocaine in half.  (See

id. at 17-20; see also supra at 3-4).   The Court and Petitioner then engaged in the

following dialogue:

| | |
|---|---|
| THE COURT: | Do you admit the truth of the factual basis and that all of the elements thereof are true and correct as they pertain to you? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | I'm going to ask you the personalization of elements. |
| | On December 6, 2010, did you knowingly and willfully intend to commit the crime of possession with intent to distribute cocaine, a Schedule II controlled substance? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Did you engage in conduct which constituted a substantial step toward the commission of that crime; that is, bringing $13,100 to the half-kilogram-of-cocaine deal on December 6, 2010, in Columbia County, Florida, which strongly corroborates your criminal intent? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Was the weight of the cocaine involved 500 grams or more? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Okay.  I do find a factual basis for the plea. |
| | Mr. Manns, is your plea free and voluntary? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Is your plea of guilty your own independent decision? |
| DEFENDANT: | Yes, sir. |

(Crim. Doc. 62 at 20-21).  Thus, Petitioner directly admitted to the elements of the offense, including the drug quantity.  Additionally, the factual basis showed that Petitioner behaved with the requisite criminal culpability to knowingly and willfully possess cocaine with the intent to distribute, that he intended to acquire 500 grams of cocaine, and that he took a substantial step toward committing that offense.  (See id. at 17-20).  The substantial step included, but was not limited to, negotiating the transaction, driving to Lake City, Florida on the appointed date and time to consummate the transaction, bringing $13,100 in cash (of which he tossed $10,600 into the undercover car),[2] and agreeing to wait while one of the agents purported to cut a kilogram in half.

Defense counsel has no duty to raise a meritless objection, Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002), nor does an attorney's decision not to raise a meritless argument prejudice a defendant, United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992).  As counsel had no basis for objecting to the adequacy of the factual basis in light of the plea colloquy, counsel did not perform deficiently.  Accordingly, Petitioner is not entitled to relief on Ground One.

---

[2]    Obviously, the $13,100 that Petitioner brought to the half-kilogram transaction corresponds to the $26,000-per-kilogram price he had negotiated. Although 21 U.S.C. §§ 841 and 846 do not require that a defendant have sufficient funds to purchase illicit inventory to be guilty of attempting to possess a controlled substance with intent to distribute, this fact contradicts Petitioner's claim that he had insufficient funds to buy 500 grams of cocaine.

**B.     Ground Two:     Whether counsel gave ineffective assistance at the sentencing hearing by not objecting to alleged sentencing manipulation**

Petitioner's second claim is that counsel gave ineffective assistance by not arguing at the sentencing hearing that the government had engaged in sentencing manipulation.  (Doc. 1 at 19-20).  Petitioner cites <u>United States v. Ciszkowski</u>, 492 F.3d 1264, 1270 (11th Cir. 2007), for the proposition that, while the Eleventh Circuit does not recognize the defense of "sentencing entrapment," the court does recognize the defenses of outrageous government conduct and "sentencing factor manipulation."  (Doc. 1 at 19).  Petitioner asserts that when he contacted undercover DEA agents, he initially only wanted to purchase "sinsemilla," a type of high-grade seedless marijuana, but that the agents told him no marijuana was available, and therefore they guided him toward purchasing cocaine (for which the penalties are higher).  (<u>Id.</u> at 20).  This amounted to sentencing factor manipulation, says Petitioner, and counsel was ineffective for not objecting to it as such.

The claim is due to be denied because the record shows that the government's conduct did not amount to sentencing factor manipulation, and therefore counsel did not perform deficiently by not making such an objection.

"[S]entencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus."  <u>Ciszkowski</u>, 492 F.3d at 1270 (citing <u>United States v. Sanchez</u>, 138 F.3d 1410, 1414 (11th Cir. 1998)).  "The standard for sentencing factor manipulation is high, even in the circuits where it has

been recognized as a viable defense[.]" Id. at 1271 (citing United States v. Montoya, 62 F.3d 1, 4 (1st Cir. 1995)). By way of example, the Eleventh Circuit declined to find sentencing factor manipulation in a murder-for-hire sting operation where the government gave the defendant a pistol with a hidden silencer, and the silencer resulted in the defendant receiving a 30-year mandatory minimum sentence. 492 F.3d at 1271. Even though the defendant did not request a silenced weapon, the government unilaterally decided to equip the gun with a silencer, and "a layperson looking at the firearm's exterior would be unable to tell that a silencer was mounted within the gun's barrel," id. at 1267, the court still found no government misconduct. The court reasoned that because the defendant had agreed to conduct a murder-for-hire, and further agreed "to accept a gun to do the job," it was foreseeable "that the government could reasonably decide that a muzzled firearm is the appropriate weapon for the commission of a murder for hire and then provide Ciszkowski with such a weapon." Id. at 1271. Likewise, the court has declined to find that the government engaged in sentencing factor manipulation in a variety of other circumstances. See, e.g., United States v. Bohannon, 476 F.3d 1246, 1252 (11th Cir. 2007) (government's selection of age of "minor" victim for sting operation was not manipulation, even though the selected age resulted in an enhancement under the guidelines); United States v. Williams, 456 F.3d 1353, 1370-71 (11th Cir. 2006) (government's purchase of crack cocaine rather than powder cocaine was not manipulation despite sentencing differential); Sanchez, 138 F.3d at 1412-13

(government informant's selection of a fictitious amount of drugs to be stolen by defendants was not manipulation of the quantity).

These cases illustrate that it is difficult to prove sentencing factor manipulation. The standard must be high in order not to easily invalidate the work of reverse sting operations, which "are recognized and useful methods of law enforcement investigation." Ciszkowski, 492 F.3d at 1271 (citing Sanchez, 138 F.3d at 1413).[3] "Therefore, to bring sting operations within the ambit of sentencing factor manipulation, the government must engage in extraordinary misconduct." Id. (emphasis added). "The fact that law enforcement may provide drugs or guns essential to a willing and predisposed offender does not necessarily constitute misconduct." Id. (citing Sanchez, 138 F.3d at 1413).

By comparison to the cases described above, the record here shows no such "extraordinary misconduct." Rather, it shows a classic reverse sting operation where the government caught a willing and predisposed offender in the act of attempting to purchase a half kilogram of cocaine with the intent to distribute. For starters, Petitioner discussed the availability of both marijuana and cocaine in his initial conversations with undercover agents, indicating that Petitioner was interested in acquiring cocaine from the beginning. (See Doc. 1 at 19-20; Doc. 4 at 9; Crim. Doc. 51 at 31). After the agent told Petitioner that marijuana was unavailable, Petitioner

---

[3]   Indeed, proving sentencing factor manipulation must require something more than the mere fact that undercover agents offered a defendant the opportunity to commit a criminal act that is more severe than some other alternative.

continued to show an interest in cocaine, eventually negotiating a transaction to purchase a half-kilogram.

Petitioner would have the Court believe that he wanted nothing to do with cocaine, that he only wanted to deal in marijuana, and that the government steered him down the path to negotiating a cocaine deal.  However, the record belies this contention.  When Petitioner could only come up with half the money for a kilogram, he did not use that opportunity to back out of the cocaine transaction he now claims he did not seek.  Instead, he persisted, asking if he could still purchase a half-kilogram, and inquiring whether the drug source would be willing to accept car titles as collateral for additional cocaine.  (See Crim. Doc. 62 at 18-19).  Moreover, Petitioner stated an interest in doing further cocaine transactions in the future.  (See id. at 18).

Accordingly, the record reflects that the government did not manipulate Petitioner into attempting to purchase cocaine only to increase his sentence.  As such, it was well within the "wide range of professionally competent assistance" for counsel not to make such an argument, and counsel did not perform ineffectively under Strickland by not doing so.  See Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting Burger v. Kemp, 107 S. Ct. 3114, 3126 (1987)) ("The petitioner must establish that particular and identified acts or omissions of counsel 'were outside the wide range of professionally competent assistance.'").

The Court also notes that defense counsel did present a mitigation argument that Petitioner initially discussed buying marijuana from the DEA agents, and only

later did the conversation turn toward cocaine.  (Crim. Doc. 51 at 51-52).  Defense counsel also informed the Court, while pleading for Petitioner to receive credit for acceptance of responsibility, that he had advised Petitioner there might be a "triable entrapment case," but that Petitioner "insisted on pleading guilty."  (Id. at 54-55). Thus, while counsel did not specifically argue sentencing factor manipulation, the record reflects that counsel identified an entrapment-type issue, but Petitioner declined to pursue it.

Reasonable counsel may take cues from their clients as to what defenses to present or what investigations to pursue.  See Strickland, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.  Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.").  Petitioner's resistance to pursuing an entrapment defense, and his decision to accept responsibility for the cocaine offense, signal that at the time, Petitioner was not interested in arguing that the government steered him into the cocaine transaction.  This record reinforces the conclusion that counsel did not perform unreasonably by not arguing sentencing factor manipulation.

In any event, the Court observed that all the evidence indicated Petitioner was willingly involving himself back in the cocaine business, and that it did not "accept the entrapment issue." (Crim. Doc. 51 at 66-67).  Similarly, the Court does not accept Petitioner's argument that the government engaged in sentencing factor

manipulation.  Therefore, the Court concludes that counsel did not give ineffective assistance by not raising the issue at the sentencing hearing.  Petitioner is not entitled to relief on Ground Two.

### C.  Ground Three:  Whether appellate counsel gave ineffective assistance by not raising an alleged <u>Tapia</u> error

Petitioner's third and final argument is that appellate counsel gave ineffective assistance by not arguing that the Court committed a <u>Tapia</u> error at sentencing.  (Doc. 1 at 20-21); <u>see also</u> <u>Tapia v. United States</u>, 131 S. Ct. 2382 (2011).  The claim is due to be denied because the record does not support the existence of a <u>Tapia</u> error, and thus it was not "outside the wide range of professionally competent assistance" for appellate counsel not to raise the issue.  <u>Chandler</u>, 218 F.3d at 1314.

<u>Tapia</u> error occurs where a court considers rehabilitation when determining whether and for how long to impose a sentence of imprisonment.  <u>Tapia</u>, 131 S. Ct. at 2388-91; <u>United States v. Vandergrift</u>, 754 F.3d 1303, 1310 (11th Cir. 2014).  <u>Tapia</u> error does not occur when a court considers rehabilitation in fashioning other aspects of a sentence, such as supervised release, probation, or a fine.  <u>See</u> <u>Tapia</u>, 131 S. Ct. at 2388 ("These provisions [18 U.S.C. §§ 3582(a), 3583, 3562(a), and 3572(a)] make clear that a particular purpose [retribution, deterrence, incapacitation, or rehabilitation] may apply differently, or even not at all, depending on the kind of sentence under consideration [imprisonment, supervised release, probation, or fine].")  Indeed, 18 U.S.C. § 3553(a)(2)(D) requires courts to consider "the need for the sentence imposed… to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

17

Congress has specifically directed courts, for example, to consider a defendant's rehabilitative needs when imposing a term of supervised release.  18 U.S.C. § 3583(c) (citing 18 U.S.C. § 3553(a)(2)(D)).   Only in crafting the imprisonment aspect of a sentence may a court not consider rehabilitation.  18 U.S.C. § 3582(a); Tapia, 131 S. Ct. at 2391 (quoting S. Rep. No. 98–225, pp. 76-77 (1983)) ("'[T]he purpose of rehabilitation,' the Report stated, 'is still important in determining whether a sanction other than a term of imprisonment is appropriate in a particular case.'").  Even so, a court does not commit Tapia error by discussing a defendant's opportunities for rehabilitation while serving a sentence of incarceration, so long as the court does not craft the length of imprisonment to accommodate rehabilitative considerations.  As the Supreme Court stated:

> A court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs. To the contrary, a court properly may address a person who is about to begin a prison term about these important matters. And as noted earlier, a court may urge the BOP to place an offender in a prison treatment program.

Tapia, 131 S. Ct. at 2392.

Here, Petitioner pins the existence of Tapia error on a single statement during the sentencing hearing, where the Court recognized that it "need[ed] to provide [Petitioner] with whatever educational and corrective treatment is appropriate[.]" (Doc. 1 at 20) (quoting Crim. Doc. 51 at 70).  Petitioner contends that "[i]f this error had been raised on appeal, Movant's sentence would have been vacated and remanded for resentencing.  Counsel performed ineffectively by not raising this issue on appeal." (Doc. 1 at 20).

Petitioner takes the Court's statement out of context, however.  The Court recognized the "need to provide [Petitioner] with… educational and corrective treatment" in the context of reviewing the § 3553(a) factors in general. (See Crim. Doc. 51 at 70).  The Court's remark was consistent with § 3553(a)(2)(D), which instructs the Court to consider the need for the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  And, as required by 18 U.S.C. § 3583(c), the Court did consider rehabilitative factors in fashioning the conditions of supervised release.  The Court stated:

> All right.  I'll give 8 years supervised release.  During that period of supervised release, in addition to the standard conditions, will require that Mr. Manns be evaluated for any substance abuse issues.  I will recommend him for any available educational and vocational programming.  Of course, Mr. Manns won't be able to use drugs at all; he'll be drug tested…

(Crim. Doc. 51 at 74).

What the Court did not do was consider rehabilitation in crafting the term of imprisonment.  As explained in detail, the Court imposed the term of imprisonment that it did for a combination of other reasons, including: (1) the amount of cocaine involved; (2) Petitioner's significant criminal history, which included both extensive participation in a cocaine operation in the 1980's and a prior violation of the conditions of supervised release in 2007; (3) the need for the sentence to promote respect for the law and specific deterrence, particularly in light of Petitioner's repeated disregard for the terms of supervised release; (4) the need to promote general deterrence, given that Petitioner had some notoriety in the drug business;

and (5) the need to protect the public from future crimes.  (See Crim. Doc. 51 at 61-72).  Nowhere in explaining the reasons for imposing a term of imprisonment did the Court cite rehabilitative considerations.

The Court did comment that during the period of incarceration, it would recommend Petitioner for educational, vocational, and substance abuse programming.  (Id. at 72-73).  However, the Court did not formulate Petitioner's prison sentence based on these programming recommendations.  The Court's recommendation did not amount to a Tapia error because "[a] court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." Tapia, 131 S. Ct. at 2392.

The foregoing establishes that the record would not have supported a Tapia error.  Thus, appellate counsel did not perform ineffectively by not briefing the matter on appeal.  "[T]o second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy[.]" Jones v. Barnes, 463 U.S. 745, 754 (1983).  Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52.  The record of the sentencing hearing shows that a Tapia error would have been a weak or non-existent issue.  Therefore, appellate counsel's performance was not outside the wide range of reasonably professional assistance.  Petitioner is thus not entitled to relief on Ground Three.

Accordingly, it is hereby

**ORDERED:**

1.     Petitioner Henry Manns's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**.

2.     The Clerk shall enter judgment in favor of the United States and against Petitioner, and close the file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue… only if the applicant has made a substantial showing of the denial of a constitutional right."  Id. at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal

in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of July, 2016.


TIMOTHY J. CORRIGAN
United States District Judge


lc 19

Copies:

Counsel of record
Pro se petitioner